Dear Chief Lewis:
This office is in receipt of your request for an opinion of the Attorney General in regard to various Town matters. You indicate that the Town of Duson is a Lawrason Act municipality with mayor, aldermen and chief of police who are elected. It is located in Lafayette and Acadia Parishes and is approximately 2.5 by 2.5 square miles in area with a portion of Interstate 10 and U.S. Highway 90 within its jurisdiction.
You set forth concerns of various actions by the mayor and town council, and question to whom they should be reported, such as the district attorney, the sheriff, state police or some other state agency.
You first make inquiry in regard to magistrate court pointing out that the mayor has designated a magistrate to serve in his behalf for all matters coming before the court but he still exercises certain responsibilities. You indicate each defendant is charged $50 or more when entering a guilty plea, but you state Atty. Gen. Op. 01-247 found the maximum amount that may be charged for court costs in $30 and this has been brought to the mayor's attention.
Additionally, you set forth that Atty. Gen. Op. 02-360 and R.S. 32:393
state that reports regarding the final disposition of traffic citations handled by the court must be forwarded to the Dept. of Public Safety and Corrections, and this has been brought to the mayor's attention, but he fails to comply. You further maintain that the mayor is in the practice of allowing alleged violators cited to appear in his office and sign a written plea of guilty prior to the court date, and allows violators to make payments on a monthly payment plan, and issue a new subpoena for the next court date if the violator fails to make a payment, revoking the prior plea, and upon failure to appear issue a bench warrant, and a bond of five hundred dollars is required if the defendant appears instead of the preset fine plus contempt of court for failing to appear. The mayor has been told not to charge the bond amount as the defendant's fine but continues to do so.
Thus, you question the $50 charge for a guilty plea, failure to report dispositions to Dept. of Public Safety, and allowing violators to plead guilty in his office and make monthly payments for the fine, and upon failure to pay, issuing a new subpoena and a bench warrant for failure to appear with a bond of five hundred dollars.
With regard to court costs, R.S. 33:441(A) does provide in mayor's court that the mayor may try all breaches of municipal ordinances and "impose fines or imprisonment, or both" and "may also impose court costs nor to exceed thirty dollars."
Additionally, this office has recognized in Atty. Gen. Op. 02-360 that the mayor may try all breaches or ordinances and impose fines and imprisonment or both for the infraction thereof, and "they should also be responsible for making the report as required by LSA-R.S. 32:393. This statute does not exempt any court from the necessity of forwarding this report to the Department of Public Safety as required under 32:393."
We find no authority to allow violators who have entered a guilty plea to make payments on a monthly "payment plan", and in Atty. Gen Op. 97-50 this office found when a court holds a person in contempt of court, it must hold a hearing and his presence is required to afford the defendant a chance to be heard which would be subject to a subpoena.
Similarly, in Atty. Gen. Op. 98-235 this office found the proper procedure would be the power to punish for contempt of court which power is expressly granted to courts under C.Cr.P. Art. 16 et seq, and under C.Cr.P. Art 22 the court has discretion whether or not to punish for direct contempt such as contumacious failure to appear in court.
Moreover, we find in Atty. Gen. Op. 00-223 this office relied upon R.S. 32:411.1A(4) which provides in part that a person charged with violation of the Highway Regulatory Act or any municipal or parish ordinance or traffic regulations may be released on his own recognizance upon signing a promise to appear. It was then stated, "If the offender fails to pay the fine by mail in advance of adjudication and fails to appear at the time and date indicated on the citation, the court may impose an additional penalty in an amount not to exceed the amount of the fine for the original violation."
Therein it was further observed as follows:
 The law permits the court to add additional fees if the named defendant does not pay the fine by mail, in advance of adjudication, nor appear at the time indicated in the citation.
 However, the statute does not permit the collection of a bond fee when the offender is being released on his own recognizance upon signing the promise to appear at the section of the citation. Therefore having the offender pay a bond fee would be inconsistent with the overall effect of R.S. 32:411.1.
Any question of misconduct in regard to matters of the magistrate court should be referred to the Judiciary Commission, with attention directed to Mr. Steven Scheckman, 601 St. Charles Avenue, New Orleans, LA 70130, phone number 504-568-8299.
Your next inquiry is in regard to vehicle purchases wherein you point out one vehicle was purchased for the police department and a new truck was purchased for the town workers "water/sewer, etc." as well as a new tractor/backhoe. You state you believe these vehicles were purchased in violation of the public bid law, not having been properly advertised for bids and only one dealer was solicited for the bid, and the dealership where the vehicles were purchased employs the son of one of the aldermen as a salesman, "and the bids are awarded as a result of the son's inside knowledge."
We find R.S. 38:2212.1 pertinent to this question wherein it provides that all purchases of any materials or supplies exceeding the sum of fifteen thousand dollars to be paid out of public funds shall be advertised and let by contract to the lowest responsible bidder, but Section A(2) is as follows:
 Any purchase by a local governmental unit of a used or new motor vehicle for conversion into a law enforcement vehicle, which purchase cost does not exceed the sum of fifteen thousand dollars shall not be subject to the threshold delineated in Paragraph (1) of this Subsection. Written specifications, quotations, and confirmations of accepted offers for such purchase shall be obtained and made a part of the purchase file. However, any such purchase which sum is in excess of fifteen thousand dollars shall be advertised and let for bid under the procedures outlined by the provisions of the Section.
Whether these vehicles fall within this provision is a question of fact that we cannot determine.
You relate that the town requires merchants to obtain a Class B permit for retail sales of alcohol at a cost of anywhere from $100 dollars to $400, which fee is listed on each permit displayed in the respective establishments, although by statute the maximum fee per permit for the population in question is not to exceed sixty dollars.
As you point out, R.S. 26:274(B) provides that municipalities of less than four hundred thousand population "shall not charge more than one hundred dollars per year for a wholesale dealer's permit, seventy-five dollars per year for a Class A retail dealer's permits "and sixty dollars per year for a Class B retail dealer's permit."
Your next issue is in regard to drug forfeiture funds from the District Attorney's office, and you state the mayor and aldermen refuse to allow you to receive cash funds in exchange for the check, although you maintain the cash is needed for drug enforcement to have informants purchase illegal narcotics from known dealers, such as "controlled buys" with a tracking system already in place.
In this matter you cite R.S. 40:2616(B)(3)(a) allowing 60% to the law enforcement agency making the seizure for drug law enforcement, but the mayor takes the position that the District Attorney has stated the funds could not be used for the intention of the police department.
We first note that R.S. 40:2616(B) provides for the establishment of a Special Asset Forfeiture Fund where all monies obtained under the provisions of the chapter are to be deposited. It then sets forth as follows:
 The court shall ensure the equitable distribution of any forfeited property, or of monies under and subject to the provisions of this Subsection, to the appropriate local, state or federal law enforcement agency so as to reflect generally the contribution of the agency's participation in any of the activity that led to the seizure or forfeiture of the property or deposit of monies under and subject to the provisions of this Subsection. The office of the district attorney shall administer expenditures from the fund. The fund is subject to public audit. Money in the fund shall be distributed in the following order of priority:
 (1) For satisfaction of any bona fide security interest or lien.
 (2) Thereafter, for payment of all proper expenses of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of custody, advertising, and court cost.
(3) The remaining funds shall be allocated as follows:
 (a) Sixty percent thereof to the law enforcement agency or agencies making the seizure, such proceeds to be used in drug law enforcement, including but not limited to reward programs established by such agencies. (Emphasis added.)
(b) Twenty percent thereof to the criminal court fund.
 (c)Twenty percent thereof to any district attorney's office that employ the attorney's that handle the forfeiture action for the state. This shall be paid into the district attorney's twelve percent fund to be used for public purposes including, but not limited to use for prosection, rewards, support and continuing legal education in furtherance of this Chapter, and in regard to Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950.
In Atty. Gen. Op 94-170 this office found under R.S. 40:2616 that drug asset forfeiture proceeds are to be distributed to the seizing agency, which in that case was the Mamou Police Department. While stating that no portion of this money could be used for anything other than drug law enforcement, it was concluded, "It is our opinion that this forfeited money must be kept separate from the City's general fund and in thecomplete control of the law enforcement agency making the seizure." (Emphasis added.)
Next you state that the mayor uses his personal vehicle while conducting business for the town and receives gasoline from the town's pump which you have been informed is approved by ordinance. However, you further indicate your main concern is that on Friday afternoons the mayor has town workers, while on the clock and receiving wages from the town, washing/ waxing/cleaning his personal vehicle. You ask whether this practice is legal even with approval by the council, or to be considered a donation of public funds.
In Atty. Gen. Op. 77-1402 this office stated that the city council might provide a mileage or expense allowance to the mayor when he or his agent is using his personal vehicle for the mayor's city business citing R.S. 33:401(A)(4) that allows the governing authority power to appropriate money and provide for expenses of the municipality. However, it further observed that "the mayor could not, as a matter of course, make his personal vehicle available to public officers and employees for use on city business, and by ordinance, be reimbursed from city funds."
Accordingly, we would conclude the mayor could use gasoline from the town's pump while conducting business for the town, but believe this would have to be in accordance with an allowance that is documented. The cleaning and washing of his personal vehicle by town worker's would also have to be validated by the governing authority and connected with the use on business for the Town, or as you state, would be donation of public funds.
In regard to your questions as to whom the matter of misuse of funds should be directed, it should be directed to the district attorney and the town attorney. As observed by this office in Atty. Gen. Op. 77-180, misappropriation of public funds, whether federal, state or town funds, would "be in violation of the criminal, as well as the civil laws of the State and federal government and, could very well involve besides the employers directing such use, also the employees and recipients of the illegal services."
In your final question you state that the Mayor and Aldermen deny nearly all your requests for additional personnel, pay raises and equipment or other budget increases although activity in the area has increased from casinos. You ask whether the mayor and aldermen can intentionally deny budget increases when the money is available, and is there any minimum amount or standard to determine what a police department budget should be.
In Atty. Gen. Op. 97-431 this office recognized that while the office of chief of police cannot be abolished or his compensation reduced during the current term, the operation of the department can be controlled in part by the governing authority insofar as they approve the budget to finance the department. While the elected chief of police has the inherent authority to control the operation of the police department and its fund, the funds are required to be budgeted and appropriated before they fall within his control. The establishing of a municipal budget "is vested exclusively with the Mayor and Council."
Similarly, in Atty. Gen. Op. 97-393 this office stated, "While the Chief of Police has control of the day-to-day operations of this department, this is subject to certain statutory restrictions exercised by the governing authority." The governing authority cannot tell the chief of police what car or how many he can operate "except indirectly insofar as they control what is budgeted for that expense." While it was recognized the governing authority cannot assign work hours or the police personnel, they may control the number of police on the force.
Therefore, in response to your question whether the mayor and aldermen can intentionally deny budget increases when the money is available, we must answer in the affirmative.
We hope this information will be of assistance to you.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By:_____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr